UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re Application to Amend the Consent Decree to Provide for Mail–Ballot Voting in IBT Elections.

No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

Jan. 11, 1995.

*OPINION & ORDER*

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff, United States of America, against defendants, the International Brotherhood of Teamsters ("the IBT") and the IBT's General Executive Board. This settlement was

embodied in the voluntary consent order entered March 14, 1989 ("the Consent Decree").

Among other things, the Consent Decree provides that IBT elections shall be conducted by direct rank-and-file voting by secret ballot. Under paragraph 12(D)(viii) of the Consent Decree, "[a]ll direct rank-and-file voting by secret ballot ... shall be by in-person ballot box voting at local unions or absentee ballot procedures where necessary."

Pursuant to paragraph 16 of the Consent Decree, the Government has applied to this Court for a modification of paragraph 12(D)(viii). Under the Government's proposed modification, all direct rank-and-file voting at future IBT elections would be conducted "by mail ballot in accordance with Department of Labor Regulations,[1] except that the Election Officer may determine, in compelling circumstances, that delegate elections in the local unions need not be conducted by mail ballot." (Government's Proposed Order at 3.)[2]

The Government argues that experience gained during the 1991 IBT elections favors modifying the Consent Decree to the extent proposed by the Government. Although the Consent Decree mandates in-person voting for all IBT elections, this Court approved election rules for the 1991 IBT delegate election that provided for mail-ballot voting. *See* July 10, 1990 Opinion & Order, 742 F.Supp. 94 (S.D.N.Y.1990), *aff'd as modified,* 931 F.2d 177 (2d Cir.1991); Michael H. Holland, Rules for the IBT International Union Delegate and Officer Election 86–89 (August 1, 1990). In this election, "mail balloting occurred in 264 of the 307 contested Local Union delegate and alternate delegate elections." The Cookbook: How the Election Officer Supervised the 1991 Teamster Election 4–2 to 4–3. In local union delegate elections where mail balloting was used, 33% of all eligible voters voted; in contrast, where

---

**1.** These regulations are codified at 29 C.F.R. § 452.96 *et seq.*

**2.** The complete text of the Government's proposed modification reads:
All direct rank-and-file voting by secret ballot described above shall be by mail ballot in ac-

cordance with Department of Labor Regulations, except that the Election Officer may determine, in compelling circumstances, that delegate elections in the local unions need not be conducted by mail ballot.
(Government's Proposed Order at 3.)

in-person voting was used, 19% of eligible voters voted. *See id.* at 4–3.

Because of the success of mail-ballot voting in the 1991 delegate election, the Election Officer drafted a plan that called for mail-ballot voting in the 1991 International Union Officer election, which the Independent Administrator submitted as an application to this Court. By Order dated September 11, 1991, this Court approved this application, finding that the plan was "fully conducive to achievement of the Consent Decree's goal of fair, open, and honest IBT officer elections in which the members of the IBT may participate freely and without interference." *See* September 11, 1991 Order, No. 88 Civ. 4486 (S.D.N.Y.1991). The results of this election also indicate that mail-ballot voting increased voter turnout. In local unions that had used in-person voting for the delegate election, but mail balloting for the International Union Officer election, voter participation increased from 19% to 29.8%. *See* Declaration of Amy Gladstein dated December 8, 1994, ¶ 4.

The Government also asserts that, apart from producing greater voter participation, in IBT elections, mail-ballot voting is superior to in-person voting for other reasons. Here, mail-ballot voting is less expensive because it requires less administrative oversight. (Government's Memorandum at 5 (citing The Cookbook: How the Election Officer Supervised the 1991 Teamster Election 2–58 to 2–59).) Mail-ballot voting also reduces the opportunities for voter intimidation and harassment. (Government's Memorandum at 5 (citing Declaration of Amy Gladstein dated December 8, 1994, ¶¶ 2, 5).)

The IBT has largely supported the Government's application. In its motion papers, the IBT states that it "agrees with the Government's Application with respect to the 1996 election." (IBT's Memorandum at 1.) Like the Government, the IBT asserts that the results of the 1991 elections demonstrate the value of mail-ballot voting.

The Government, however, contends that the Consent Decree should be modified so that mail-ballot voting will be the standard method of conducting all future IBT elections. In contradistinction, the IBT contends that the Consent Decree should only be modified to provide for mail-ballot voting in the 1996 IBT election. Under the IBT's proposed modification, the Consent Decree would continue to provide for in-person voting for all IBT elections after 1996.[3]

■ In *Juan F. v. Weicker*, 37 F.3d 874 (2d Cir.1994), the Second Circuit reviewed the standard for modification of a consent decree. The *Weicker* court stated that "a party may obtain modification of a consent decree by establishing that there has been a significant change in circumstances, factual or legal, and that the proposed modification is suitably tailored to deal with the changed circumstances." *Id.* at 878 (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383, 112 S.Ct. 748, 760, 116 L.Ed.2d 867 (1992)). Although district courts have substantial discretion to modify consent decrees, "[m]odification is a remedy not to be lightly awarded." *Id.* The *Weicker* court cautioned that modifications of consent decrees may " 'discourage compromise for fear of adverse judicial modification.' " *Id.* (quoting *Walker v. HUD*, 912 F.2d 819, 826 (5th Cir.1990)).

■ In the instant case, this Court finds that there has been a significant change in circumstances that warrants a modification of the Consent Decree. Since the Consent Decree was entered into in 1989, the circumstances have changed significantly because it now appears that mail-ballot voting—rather than in-person voting—best promotes the Consent Decree's goal of fair, democratic IBT elections. In 1989, when the parties entered into the Consent Decree, it was believed that in-person voting would best promote democratic IBT elections. Yet, as both the IBT and the Government now agree, the 1991 elections demonstrate that mail-ballot voting promotes increased voter partic-

---

**3.** The text of the IBT's proposed modification reads:

    The rank-and-file voting by secret ballot in the 1996 Election shall be by mail ballot in accordance with Department of Labor Regulations, except that the Election Officer may determine, in compelling circumstances, that delegate elections in the Local Unions need not be conducted by mail ballot.

(IBT's Proposed Order at 3.)

ipation, while reducing the opportunity for voter intimidation and harassment.

For several reasons, this Court finds that the Government's proposed modification to the Consent Decree is "suitably tailored to deal with the changed circumstances." *Weicker,* 37 F.3d at 878. The Government's proposed method of conducting elections has proven effective in the 1991 IBT elections. As discussed previously, the 1991 elections demonstrated that IBT members are more likely to participate in a mail-ballot election. The 1991 elections also demonstrated that in-person voting simply does not work as well as mail-ballot voting. Elections that used in-person voting produced substantially lower voter turn out, and the Election Officer found that they increased the risk that voters would be harassed or intimidated. In addition, in light of the fact that this Court has previously addressed this voting-method issue twice regarding the 1991 elections and now must address this issue again, the Government's proposed modification promotes judicial economy. In 1991, this Court approved election rules that permitted delegates to be elected by mail-ballot voting. July 10, 1990 Opinion & Order, 742 F.Supp. 94 (S.D.N.Y.1990), *aff'd as modified,* 931 F.2d 177 (2d Cir.1991); Michael H. Holland, Rules for the IBT International Union Delegate and Officer Election 86–89 (August 1, 1990). Later in 1991, this Court approved the Election Officer's plan to permit mail-ballot voting in the 1991 International Union Officer election. *See* September 11, 1991 Order. Currently, both parties agree that mail-ballot voting should be used in the 1996 election. Thus, the Consent Decree's in-person voting requirement has created a recurring need to seek this Court's intervention in order to implement mail-ballot voting, and the Government's proposed modification is suitably tailored to remedy this problem.

■ In contrast, the IBT's proposed modification to the Consent Decree is not "suitably tailored to deal with the changed circumstances" in this case. *Weicker,* 37 F.3d at 878. Under the IBT's proposal, the Consent Decree would be modified so that mail-ballot voting would only be employed in the 1996 election. The IBT proposes retaining in-person voting in future IBT elections, despite the fact that both parties agree that in-person voting is inferior to mail-ballot voting. The IBT's proposal is not suitable because it mandates an inferior method of electing IBT delegates and officers in future IBT elections, absent another application to this Court. As such, the IBT's proposal raises the probability that this Court will be required needlessly to rehash the voting-method issue in the context of the IBT's next election.

In sum, the Government's proposed modification of the Consent Decree is suitably tailored to the changed circumstances in the instant case. Further, the Government's proposed modification reduces the chances that, in the future, this Court will be needlessly called upon again to review the voting method used in IBT elections. Thus, this modification recognizes the importance of limiting modifications of consent decrees in general and limiting modifications of this Consent Decree in particular.

It should be emphasized that modification of consent decrees discourages future litigants from settling disputes because of the fear that the obligations created by a settlement may change over time. The parties should not view this Court's decision to modify the Consent Decree as a departure from the rigorous standards that govern modifications of consent decrees.

## CONCLUSION

IT IS HEREBY ORDERED that paragraph 12(D)(viii) of the Consent Decree is modified to read:

> All direct rank-and-file voting by secret ballot described above shall be by mail ballot in accordance with Department of Labor Regulations, except that the Election Officer may determine, in compelling circumstances, that delegate elections in the local unions need not be conducted by mail ballot.

SO ORDERED.